In re PATERNITY OF S.J.S.

Angela Michelle Shehan, Appellant–
Petitioner,

v.

Douglas Eugene Hogan, Appellee–
Respondent.

No. 03A05–0408–CV–441.

Court of Appeals of Indiana.

Nov. 23, 2004.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

■ In this appeal, the State questions the trial court's determination setting aside an Order/Notice to Withhold Income for Child Support, issued by the Bartholomew County Child Support Division to Douglas Eugene Hogan's bank, the Evansville Teachers FCU, in order to attach funds.[1]

We reverse.

### DISPOSITIVE ISSUE

Whether the trial court erred by issuing an order setting aside the order/notice to withhold income for payment of a child support arrearage owed by Hogan.

### FACTS

Most of the underlying facts are taken from notations in the Chronological Case Summary ("CCS"). In June 1997, Hogan was "found to be the father" of S.J.S. and ordered to pay $75 per week in child support through an "Immediate Income Withholding Order." (App.7). Thereafter, a body attachment was issued. On January 8, 1998, the body attachment was recalled, Hogan was ordered to pay $75 per week in child support and $75 per week on the arrearage of $1,249.55, and a "Delinquent Income Withholding Order" was entered. (App.6). In February 1998, another body attachment was issued and bond was set at $2,500.

In March 2000, the body attachment was returned and recalled. On March 15, 2000, the trial court received a letter from Hogan requesting a modification of child support. On July 24, 2000, an "Administrative" Income Withholding Order was issued. (App.6). After a hearing in December 2000, it was determined that Hogan was $4,578.65 in arrears on child support.

On June 26, 2001, Hogan and S.J.S.'s mother entered into an agreement that Hogan would pay $75 per week in child support and $15 per week toward the arrearage, which was "$2,827.23 as of June 2, 2001." (App.4). Also, the trial court added "8% annum interest to the arrearage." (App.4).

On July 17, 2002, the Indiana Division of Family and Children Services, by a deputy prosecuting attorney, became involved by filing a verified petition for an application for a contempt citation. The petition was dismissed in August 2002, and an "Administrative Income Withholding Order" was issued. (App.3). In September 2002, Ho-

---

1. Hogan did not file a brief on appeal. "[W]e do not undertake the burden of developing arguments for the appellee." *Damon Corp. v. Estes,* 750 N.E.2d 891, 892–93 (Ind.Ct.App. 2001). In such cases, we apply a less stringent standard of review with respect to demonstrating reversible error; accordingly, we will reverse if the appellant can establish *prima facie* error. *Id.* at 893.

gan petitioned for a modification of child support. On February 5, 2003, the trial court found that Hogan's arrearage was $3,737.23 as of January 28, 2003. The court reduced Hogan's child support to $54 per week, retroactive to October 21, 2002. The court noted that the reduced support payment was considered in calculating the child support arrearage, and Hogan was order to pay $21 per week toward the arrearage "until paid in full." (App.3). Also, an "Income Withholding Order" was entered. (App.3).

On December 18, 2003, the trial court received a letter from Hogan's employer stating that Hogan was "no longer employed with them as of December 5, 2003." (App.2). On January 5, 2004, an "Administrative Income Withholding Order" was filed. (App.2). On February 26, 2004, Hogan again petitioned for a modification of child support. On March 16, 2004, another "Administrative Income Withholding Order" was filed. (App.2). The trial court held a hearing on April 27, 2004. Hogan's petition was denied "and all orders shall remain in full force and effect." (App.2).

After learning of the existence of an account, on June 2, 2004, the Bartholomew County IV–D Agency, Child Support Division, issued an "Order/Notice to Withhold Income for Child Support" to the Evansville Teachers FCU, a financial institution. (App.15–16). On June 15, 2004, Hogan filed with the trial court his "Motion to Set Aside Order/Notice to Financial Institution to Withhold Income For Child Support." (App.1, 10). In his motion, Hogan alleged:

1. That the respondent is under an order to pay on his support arrearage in the amount of $21.00 per week in addition to his regular support of $54.00 per week.

2. That an income withholding order for the respondent's child support obligation is in place.

3. That in addition, the respondent has been informed that his tax refunds in the total amount of $2,781.00 is being held and that the tax refunds being held and not yet applied and the amount being applied will exceed the arrearage amount.

4. That in addition the amount of $138.07 was withdrawn from the respondent's savings account to be applied toward the arrearage in this cause.

5. That attaching funds from the respondent's bank accounts will work a hardship on the respondent and the respondent's family.

(App.10–11).

On July 1, 2004, the State filed its response and motion to dismiss Hogan's motion to set aside the income withholding order sent to Evansville Teachers FCU. In part, the State alleged:

3. On or about June 2, 2004, the Bartholomew County Prosecutor's Office—Child Support Division issued the Order/Notice to Withhold Income for Child Support ... [to] Evansville Teachers FCU ... as information was received, pursuant to federal and state statute, regarding monies in a bank account held by the Respondent. At that time, the Respondent's child support arrearage was approximately $2,720.00.

4. As a result of said Order/Notice, on or about June 10, 2004, the Clerk of Bartholomew County received a check in the amount of $138.07 from Evansville Teachers FCU, which was then disbursed to the Petitioner and applied to the Respondent's child support arrearage under this cause number.

\* \* \* \* \*

6. The Order/Notice ... issued to Evansville Teachers FCU is a valid order

to obtain the money in the [Respondent's] accounts to be applied to the child support arrearage in this cause. Pursuant to federal mandate, Indiana has enacted Indiana Code 12–17–2–33.1, which allows money to be withheld from an obligor's bank account and that money to be applied to his child support arrearage. It is federally mandated that States enter into agreements with financial institutions to set up procedures ... regarding non-custodial parents who maintain an account with the financial institution and who owe past due child support as well as procedures for surrendering or encumbering the assets in an account held by the noncustodial parent for the payment of past due child support.

\* \* \* \* \*

8. ... The financial institution, ... is an "income payor" which means "an employer or other person who owes income to an obligor" as defined under I.C. 31–9–2–57 and I.C. 31–18–1–7 and the financial institution "owes income" to the obligor which means "anything of value owed to an obligor" as defined under I.C. 31–9–2–56 and I.C. 31–18–16. The obligor as an owner of the ... account is entitled to a form of income from the credit union which would be a lump sum payment up to the amount that is being held in the account. Therefore, the Order/Notice does properly apply I.C. 31–16–15–19 to this case.

(App.12–13). The State noted that Hogan had received notice with regard to previous income withholding orders, and noted that the relevant statutes provided for separate procedures for contesting income withholding orders depending upon whether the orders were issued by a court or the Title IV–D agency.

The CCS does not indicate that a hearing was held on the motion to set aside. However, a CCS entry for July 15, 2004, indicates that Hogan's motion to set aside was granted. In pertinent part, the order provides:

Comes now the Court and grants Motion to Set Aside:

1. Assets are not income.
2. The attachment violates the 14th Amendment to the U.S. Constitution.
3. The attachment violates Article 1, section 12 of Indiana Constitution.

(App.9).

The State brought this appeal.

### DECISION

■ The State urges that the trial court erred when it held that the savings account did not constitute "income" subject to attachment by an income withholding order. We agree.

Pursuant to Title 42 of the United States Code, Chapter 7 (Social Security), Subchapter IV (Grants to States for Aid and Services to Families With Children and for Child–Welfare Services), Part D (Child Support and Establishment of Paternity), commonly known as Title IV–D and hereinafter referred to as such,

federal law establishes procedures for effective child support enforcement, where "accounts" held in the various states—including "savings account[s]"— are subject to seizure for payment of overdue support owed by a noncustodial parent. *See* 42 USC § 666(a)(17).

*Cox v. Anderson,* 801 N.E.2d 775, 778–79 (Ind.Ct.App.2004).

Included within the federal statutory system is a provision for the Federal Parent Locator Service. *See* 42 U.S.C. § 653. The Service exists, *inter alia,* "[f]or the purpose of establishing parentage or establishing, setting the amount of, modify-

ing, or enforcing child support obligations, . . . ." 42 U.S.C. § 653(a)(2). One express purpose of the Service is to obtain information with regard to *assets* owned by individuals with child support obligations in order for that information to be transmitted to Title IV–D agencies. The statute provides, in part:

> The Federal Parent Locator Service shall obtain and transmit to any authorized person. . . .
>
> (A) information on, or facilitating the discovery of, the location of any individual—
>
> > (i) who is under an obligation to pay child support;
> >
> > (ii) against whom such an obligation is sought;
> >
> > (iii) to whom such an obligation is owed; or
> >
> > (iv) who has or may have parental rights with respect to a child,
>
> \* \* \* \* \*
>
> (B) information on the individual's wages (or other income) from, and benefits of, employment (including rights to or enrollment in group health care coverage); and
>
> (C) information on the type, status, location, and amount of any *assets* of, or debts owed by or to, any such individual.

*Id.* (emphasis added).

Further, 42 U.S.C. § 666(a) establishes procedures required by states in order to improve the effectiveness of child support enforcement, including:

> (17) Financial institution data matches.—
>
> > (A) In general.—Procedures under which the State agency shall enter into agreements with financial institutions doing business in the State—

> > > (i) to develop and operate, in coordination with such financial institutions, and the Federal Parent Locator Service in the case of financial institutions doing business in two or more States, a data match system . . . in which each such financial institution is required to provide . . . the name, record address, social security number or other taxpayer identification number, and other identifying information for each noncustodial parent who maintains an account at such institution and who owes past-due support, . . . and
> > >
> > > (ii) in response to a notice of lien or levy, encumber or surrender, as the case may be, *assets* held by such institution on behalf of any noncustodial parent who is subject to a child support lien. . . .

*Id.* (emphasis added).

In order to implement the various Title IV–D requirements imposed upon states by the federal Social Security Act, Indiana's General Assembly established the Child Support Bureau. *Collier v. Collier*, 702 N.E.2d 351, 353 (Ind.1998). "The duties of the Bureau are set out in Indiana Code § 12–17–2–21" and include the obligation to

> (4) Implement income withholding in any Title IV–D case:
> > (A) with an arrearage; and
> > (B) without an order issued by a court or an administrative agency.

*Id.* (quoting Ind.Code § 12–17–2–21(a)).

Indiana statutory provisions require financial institutions to provide information to child support divisions of the counties when noncustodial parents are delinquent in child support and "hold one (1) or more accounts with the financial institution." I.C. § 12–17–2–33.1(b)(1). Further, pursuant to Indiana Code § 31–9–2–56, "in-

come" is defined in accordance with "the meaning set forth in IC 31–18–1–6." Indiana Code § 31–18–1–6 states: " 'Income' means anything of value owed to an obligor."

It is patently clear from the foregoing federal and state law that "assets" constitute "income" for the purposes of implementing Title IV–D. Here, the assets within an account held by an obligor, in this case Hogan, constitute "income" for the purposes of an income withholding order.

■ As noted by the State, when the facts are not in dispute and an appeal presents only questions of law, we owe no deference to a trial court's determination. *See Carmichael v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001). We evaluate such questions *de novo. Id.* Thus, the trial court erred by determining that assets do not constitute income.

■ The State also urges that the trial court's findings that attachment of the account violated both the federal and Indiana constitutions was gratuitous and unnecessary to the outcome. This is especially so where Hogan did not argue any such violations in his motion to set aside the Notice/Order and the trial court offered a nonconstitutional ground for its decision. We agree.

In *Indiana Wholesale Wine & Liquor v. State,* 695 N.E.2d 99 (Ind.1998), our supreme court stated:

> The doctrine of judicial restraint in deciding the constitutionality of statutes traces its genesis to Chief Justice Marshall, but it was Justice Brandeis's concurring opinion in *Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936), "that gave the principle so much of its enduring importance." In *Ashwander,* Justice Brandeis set forth "a series of [seven] rules under which [the Court] ha[d] avoided passing upon a large part of all the constitutional questions pressed upon it for decision." Two of the rules present themselves for invocation in the case at hand. First, "[t]he [Supreme] Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.... Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction ..., the Court will decide only the latter." Second, " '[w]hen the validity of [a statute] is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that [the Supreme Court] will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.' "

*Id.* at 106 (citations omitted in part) (footnotes omitted).

Here, the trial court was not presented with constitutional bases for setting aside the Notice/Order. Because the trial court offered a nonconstitutional basis for its ruling, it need not have raised, *sua sponte,* the constitutional issues.

The trial court's judgment is reversed.

FRIEDLANDER, J., and MATHIAS, J., concur.