**INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, Appellant,**

**v.**

**STEEL DYNAMICS, INC., Appellee.**

**No. 49A02–0712–CV–1146.**

Court of Appeals of Indiana.

Oct. 7, 2008.

---

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

David L. Hatchett, Thomas W. Baker, Hatchett & Hauck LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

The Indiana Department of Environmental Management ("IDEM") appeals the order of the Marion Superior Court reversing the Office of Environmental Ad-

judication's ruling in favor of IDEM on its claim that an electric arc furnace dust silo owned by Steel Dynamics, Inc. ("SDI") was a hazardous waste tank subject to hazardous waste regulations. SDI cross-appeals and claims that the trial court erred in concluding that there was a genuine issue of material fact with regard to whether there had been a release of hazardous waste at the SDI facility.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

SDI owns and operates a small steel mill in Pittsboro, Indiana. The SDI mill uses an electric arc furnace ("EAF") to melt scrap metals into various types of steel. Pursuant to the air permit issued by IDEM, emissions from the EAF are pulled into a "baghouse," a large building containing several large, fabric filters which trap particulate matter and dust but allow air to pass through to a stack. The particulates and dust fall down into a "hopper" and are then piped into the top of a silo. The dust is removed from the silo by trucks which pull into a room under the silo, where the dust is loaded onto the trucks and taken away for disposal. Pursuant to 40 C.F.R. § 261.32, emission control dust from electric arc furnaces (referred to as "EAF dust" or "EAFD") is listed as EPA Hazardous Waste No. K061. After the dust is removed from the silo, SDI treats the dust as a hazardous waste per federal regulations.

On June 30 and October 28, 2004, IDEM agents inspected the SDI mill and issued an inspection report which alleged various problems at the mill. After negotiations, the parties were unable to enter into an agreed order. Therefore, the Commissioner of IDEM issued an Order alleging various violations, including the failure to properly manage the dust silo, which IDEM claimed was a hazardous waste tank subject to regulation under the federal Resource Conservation and Recovery Act (commonly known as "RCRA").[1] The IDEM Order directed SDI to comply with the applicable federal regulations concerning the tank containing the EAF dust. The Order also alleged that SDI had released the dust in violation of state statute.

On July 12, 2006, SDI appealed the IDEM order to the Office of Environmental Adjudication ("OEA"), claiming that the dust silo was not a hazardous waste tank and that there had not been a release of hazardous waste. On November 15, 2006, both parties moved for summary judgment before the OEA. On March 7, 2007, an environmental law judge ("ELJ") issued the OEA's order, ruling in favor of IDEM on the question of whether the silo was a hazardous waste tank, but finding that a genuine issue of material fact existed as to whether there had been a release of hazardous waste.

On April 9, 2007, IDEM filed a petition for judicial review in Marion Superior Court. The trial court affirmed the OEA's denial of summary judgment with regard to the question of a release of hazardous waste but reversed the OEA's decision regarding the silo's designation as a hazardous waste tank. This appeal ensued.

## Standard of Review

■ Although the legislature has granted to courts the power to review the actions of state agencies taken pursuant to the Administrative Orders and Procedures Act ("AOPA"), this judicial review is limited in scope. *Ind. State Bd. of Educ. v. Brownsburg Cmty. Sch. Corp.*, 865 N.E.2d 660, 665 (Ind.Ct.App.2007) (citing *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000)). The burden of demonstrating

1. *See* 42 U.S.C. § 6901.

that an agency's action is invalid rests with the party asserting the invalidity. *Id.* (citing Ind.Code § 4–21.5–5–14(a) (2002)). A court may set aside agency action only if it determines that the action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. I.C. § 4–21.5–5–14(d); *accord Griffin,* 730 N.E.2d at 1257; *Brownsburg,* 865 N.E.2d at 665.

 A reviewing court grants deference to the administrative agency's findings of fact, but no such deference is accorded to the agency's conclusions of law. *Griffin,* 730 N.E.2d at 1257. However, an interpretation of statutes and regulations by the administrative agency charged with enforcing those statutes and regulations is entitled to great weight, and the reviewing court should accept the agency's reasonable interpretation of such statutes and regulations, unless the agency's interpretation would be inconsistent with the law itself.[2] *Brownsburg,* 865 N.E.2d at 665 (citing *Griffin,* 730 N.E.2d at 1257). Indeed, when a court determines that an administrative agency's interpretation is reasonable, it should terminate its analysis and not address the reasonableness of the other party's interpretation. *Shaffer v. State,* 795 N.E.2d 1072, 1076 (Ind.Ct.App. 2003) (citing *Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n,* 695 N.E.2d 99, 105 (Ind.1998)). "Terminating the analysis recognizes 'the general policies of acknowledging the expertise of agencies empowered to interpret and enforce statutes and increasing public reliance on agency interpretations.'" *Id.* (quoting *Ind. Wholesale Wine,* 695 N.E.2d at 105).

## I. Hazardous Waste Tank

 IDEM claims that the OEA's conclusion that the EAF dust silo was a hazardous waste tank was reasonable based upon the plain meaning of the applicable regulations. Resolving this question requires us to consider two primary regulatory provisions. First, 329 Indiana Administrative Code 3.1–4–1 provides that "the definitions contained in 50 CFR 260 through 40 CFR 270 are hereby adopted and incorporated by reference to this article, except as provided otherwise in subsection (b)." Pursuant to the incorporated federal definition, "[e]mission control dust/ sludge from the primary production of steel in electric furnaces" is listed as a "hazardous waste," with the designation K061. 40 C.F.R. § 261.32. Thus, the applicable regulations define the EAF dust as a hazardous waste.

Further, the relevant incorporated federal regulation defines "tank" as "a stationary device, designed to contain an accumulation of hazardous waste which is constructed primarily of non-earthen materials (e.g., wood, concrete, steel, plastic) which provide structural support." 40

---

**2.** SDI claims that IDEM has waived any claim that its interpretation of the relevant statutory and regulatory provisions should be given weight by failing to make this argument below. We disagree. This "argument" is part of our standard of review. As we recently explained in *Town of Chandler v. Indiana–American Water Co.,* 892 N.E.2d 1264, 1268 (Ind.Ct.App.2008), the parties need not present the standard of review as an issue before we may address it because the applicable standard of review is always before us as an appellate court. We cannot turn a blind eye to the standard of review which requires us to give deference to the interpretation of statutes and regulations by the administrative agency charged with enforcing those statutes and regulations.

C.F.R. § 260.10. It appears to be undisputed that the dust silo fits this definition of a tank. Based upon these definitions, the ELJ concluded, "[a]s the EAFD is a listed hazardous waste and the silo meets the definition of a 'tank', the baghouse dust storage silo is a tank that must be managed in compliance with appropriate RCRA rules." *Id.*

SDI claims that the EAF dust does not become a "hazardous waste" until it has left the silo, because until then, SDI asserts, it is not a "solid waste." SDI notes that federal statute defines a "hazardous waste" as a "solid waste, or combination of solid wastes." 42 U.S.C. § 6903(5). Thus, SDI claims that hazardous waste is a subset of solid waste, and before a substance can be considered a hazardous waste, it must first be determined whether the substance is a solid waste.

We agree with SDI that hazardous waste is a subset of solid waste, but this does not help SDI's argument. The logic of the situation is that, while not all solid waste is a hazardous waste, all hazardous waste is a solid waste. The applicable regulations have already defined EAF dust as a hazardous waste, and by logical extension, a solid waste. Therefore, we need not delve into the question of whether EAF dust is a solid waste, as the applicable regulations have already defined it as such.

The ELJ concluded, based upon the clear language of the federal regulations, incorporated by reference by the applicable Indiana regulation, that EAF dust is a hazardous waste and that the silo is a stationary device designed to contain an accumulation of EAF dust. The ELJ therefore concluded that the silo was a hazardous waste tank subject to RCRA requirements. This interpretation is not unreasonable, and the trial court on review should have terminated its analysis and not addressed the reasonableness of SDI's proposed interpretation. *See Shaffer,* 795 N.E.2d at 1076. Because IDEM's interpretation of the applicable regulations was reasonable, the trial court erred in reversing the OEA's ruling.

SDI claims that, contrary to IDEM's interpretation, the EPA's own interpretation of the statutes and regulations at issue favor its position that the EAF dust silo is not a hazardous waste tank subject to RCRA regulations. SDI refers first to EPA's response to a comment to an EPA rule conditionally excluding treated EAF dust from a plant owned by Nucor Steel in Crawfordsville, Indiana from the requirements of RCRA regulation if the waste was disposed of in a landfill which was permitted, licensed, or registered by the State to manage industrial solid waste. *See* 67 Fed.Reg. 1888 (Jan. 15, 2002). One of the comments to this rule asked, "Are the silos in which EAFD is accumulated considered accumulation tanks since the exclusion is only for EAFD that has been treated?" *Id.* at 1893. The EPA responded in relevant part:

> The silos are part of the production unit and not RCRA regulated tanks. Baghouse silos that are directly connected via piping to the baghouse are an integral part of the EAFD emission control system. Furthermore, the waste accumulated is in the silos for less than 90 days, and the silos are part of the treatment equipment. The point of generation does not occur until the treatment is complete and the waste exits the unit. Therefore, the silos are not accumulation tanks and are not subject to RCRA.

*Id.*

In this comment, the EPA agrees with essentially all of SDI's current argument, i.e., that EAF dust silos are not hazardous waste tanks subject to RCRA regulation because the EAF dust does not become a

hazardous waste until it leaves the silos. Assuming that this is the official position of the EPA,[3] then there is a conflict between how IDEM and the EPA interpret the applicable regulations. SDI argues that since IDEM did not promulgate its own regulations, but simply incorporated by reference the relevant EPA regulations, then EPA's interpretation should trump that of IDEM. This it seems was the position of the trial court.

■ However, a state may choose to impose more stringent regulations than those imposed by RCRA, and " 'RCRA sets a floor, not a ceiling, for state regulation of hazardous wastes.' " *Safety–Kleen, Inc. v. Wyche*, 274 F.3d 846, 863 (4th Cir. 2001) (quoting *Old Bridge Chems., Inc. v. N.J. Dep't of Envtl. Prot.*, 965 F.2d 1287, 1296 (3d Cir.1992)). This is not altered by the fact that IDEM simply incorporated the EPA regulations by reference. This incorporation does not, in our opinion, require IDEM to blindly follow the EPA's interpretation of these regulations. By incorporating these regulations, they became IDEM regulations, and subject to independent IDEM interpretation, just as much as if IDEM had promulgated them itself.

As stated above, IDEM's interpretation of the relevant statutes and regulations is reasonable, and we see no need to further address this issue, regardless of how EPA interprets these regulations, because the EPA simply sets the absolute minimums that must be met. The trial court erred by not accepting the reasonable interpretation of the agency charged with enforcing the statutes and regulations at issue.

## II. Summary Judgment

■ On cross-appeal, SDI claims that the trial court erred in determining, as did the ELJ, that there was a genuine issue of material fact with regard to whether a spill of the EAF dust had occurred at the SDI site. Summary judgment is appropriate only where the designated evidence reveals no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Garneau v. Bush*, 838 N.E.2d 1134, 1140 (Ind.Ct.App.2005), *trans. denied.*

SDI claims that IDEM offered no admissible evidence supporting its allegation that a spill occurred. Specifically, SDI objects to an inspection report prepared by IDEM which IDEM submitted as an exhibit to its response to SDI's motion for partial summary judgment. This inspection report indicated that EAF dust had been released through holes and gaps present in the baghouse building structure and by "drag-out" of dust at the entrance doors to the baghouse. SDI claims that this inspection report contained inadmissible hearsay which did not fall within the public records exception to the hearsay rule because the report amounted to an investigative report. *See* Ind. Evidence Rule 803(8) (generally excepting public records and reports from hearsay rule but not "investigative reports prepared by or for a government, a public office, or an agency when offered by it in a case in which it is a party."). IDEM claims that the inspection report is not an investigative report under Evidence Rule 803(8).

■ We note, however, that the inspection report was submitted to the ELJ by

---

**3.** IDEM refers us to a consent decree involving the EPA and another company which indicates that, in that case, the EPA required the company to "comply with the requirements of 40 C.F.R. Part 265 Subpart J, with respect to the management of K061 dust in silos." Appellant's App. p. 395. Thus, even the EPA seems to treat EAF dust in an inconsistent manner.

SDI as an exhibit attached to its own motion for partial summary judgment. Although SDI later moved to strike IDEM's submission of this report, SDI had itself submitted the report to the ELJ. SDI may not now complain that the ELJ or the trial court erred in considering an exhibit that SDI submitted. A party may not submit evidence and then claim error based upon the consideration of such evidence. *See Beeching v. Levee,* 764 N.E.2d 669, 674 (Ind.Ct.App.2002) (where appellant sought and obtained admission of evidence, he invited any error in the admission thereof).

The inspection report clearly indicates that there was a release of the EAF dust at the SDI site. As such, we cannot agree with SDI that there was no evidence of a release, and the ELJ and the trial court properly denied SDI's motion for partial summary judgment on the issue of a release.

### Conclusion

The trial court erred in reversing the conclusion of the ELJ that the EAF dust silo was a hazardous waste tank subject to the appropriate regulations. The trial court did not err in agreeing with the ELJ that SDI was not entitled to partial summary judgment.

Affirmed in part, reversed in part, and remanded.

BAKER, C.J., and BROWN, J., concur.