**COMMISSIONER, DEPARTMENT OF REVENUE and State Department of Revenue, Appellants–Respondents,**

v.

**Paul D. FORT, Appellee–Petitioner.**

**No. 49A02–0103–CV–159.**

Court of Appeals of Indiana.

Dec. 10, 2001.

Publication Ordered Jan. 14, 2002

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, for Appellants.

Lynne D. Lidke, Timothy W. Wiseman, Scopelitis, Garvin, Light & Hanson, P.C., Indianapolis, IN, for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellants-respondents Commissioner, Indiana Department of Revenue ("the Commissioner"), and Indiana Department of Revenue ("the Department") appeal the trial court's reversal of the Department's denial of a commercial driver's license ("CDL") to appellee-petitioner Paul D. Fort ("Fort"). We reverse.

## Issue

The Department and the Commissioner raise two issues on appeal, which we consolidate and restate as whether the Department's denial of Fort's CDL application was supported by substantial evidence and not contrary to law.

## Facts and Procedural History

█ The State of Indiana first issued Fort a CDL in 1991. On July 31, 1994, Fort suffered a severe headache; four days later an aneurysm burst in his head. Immediately thereafter, he experienced weakness on his left side and heaviness in his chest, but never lost consciousness. The burst aneurysm has never been repaired. In September 1994, Fort was diagnosed with Moyamoya disease,[1] which was identified as the underlying cause of the aneurysm. In 1995 and 1997, Fort's doctors certified him as able to drive commercial vehicles and submitted their reports to the Bureau of Motor Vehicles ("the BMV");[2] on both occasions the BMV allowed Fort to retain his commercial driving privileges.[3]

Fort's doctor certified him again in 1999, but this time the Department denied his application. The Department had audited Fort's file for completeness and submitted it to the Indiana Driver's License and Advisory Committee ("IDLAC")[4] for guidance on CDL applications from persons with Moyamoya disease. In a report prepared by an IDLAC physician/committee member, IDLAC recommended that Fort be disqualified from holding a CDL because he suffered from "moyamoya disease, a cerebral aneurysm, a vascular malformation and a past history of intracerebral hemorrhage." After a hearing before a Department administrative law judge ("ALJ"), the ALJ recommended that Fort's commercial driving privileges be suspended indefinitely. On October 15, 1999, the Commissioner issued a final order incorporating the suspension recommendation. Fort petitioned for judicial re-

1. Moyamoya disease is defined as "[a] chronic cerebral [vascular disease] primarily occurring in childhood and characterized by slowly progressive carotid artery narrowing and occlusion at the base of the brain." HEALTH ON THE NET FOUNDATION, MOYAMOYA DISEASE, *available at* http://www.hon.ch/cgi-bin/HONselect?browse+C10.228.140.300.200.600 (last modified Aug. 28, 2001).

2. The BMV is the state agency responsible for issuing CDLs, even though the Department has authority over all matters pertaining to commercial motor carriers. *See* 140 IND. ADMIN. Code 7-3-1 to -20 (defining BMV CDL procedures); *see also Dailey Oil, Inc. v. Jet Star, Inc.*, 650 N.E.2d 345, 346 (Ind.Ct.App. 1995) (noting that all motor carrier regulatory powers were delegated to Department effective in 1988). The Commissioner may "contract with public and private institutions, agencies, businesses, and organizations to conduct any or all testing required in the implementation of the commercial driver's license program." IND.CODE § 9-24-6-5. Be-

cause of the Department's statutory authority to rely on other agencies for CDL testing, we conclude that the BMV's interpretations of the statutes in question (and the Department's reliance thereon) are entitled to the same deference as if the Department itself had interpreted them.

3. A CDL expires on the last day of the applicant's birth month four years after it is issued. *See* 140 IND. ADMIN. CODE 7-3-7(b). An applicant must pass a physical examination prior to applying for a CDL and every two years thereafter. *See* 140 IND. ADMIN. CODE 7-3-3(7).

4. IDLAC is a committee within the BMV composed of five persons serving at the BMV commissioner's pleasure: two must be medical doctors with unlimited licenses to practice in Indiana, and one must be an optometrist. *See* IND.CODE § 9-14-4-2. The BMV commissioner may request assistance from any IDLAC member at any time. *See id.* § 9-14-4-5.

view, and on January 23, 2001, the trial court reversed the Department's order.

The trial court found, among other things, that Fort was medically qualified to hold a CDL and that IDLAC's recommendation was unpersuasive because it had not conducted its own examination of Fort or consulted with his doctors.[5] The court concluded that the Department's denial of Fort's CDL was not supported by substantial evidence and was contrary to law because no medical examiner had determined that Fort's condition impaired his driving. The court ordered the Department to restore Fort's driving privileges and to conduct further administrative proceedings consistent with its decision. The Department now appeals.

### Discussion and Decision

 When we review the actions of an administrative agency, we shall grant relief only if we determine that a person seeking judicial relief has been prejudiced by an agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

IND.CODE § 4–21.5–5–14(d). We grant great deference to an agency's findings of fact, but no deference to its conclusions of law. *See LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000). An interpretation of a statute by an agency charged with the duty of enforcing it is entitled to great weight, unless the interpretation would be inconsistent with the statute itself. *See id.* When the facts are undisputed, we are asked to apply a statutory provision to a set of facts, and therefore the question is one of pure law. *See Ashlin Transp. Serv., Inc. v. Indiana Unemployment Ins. Bd.,* 637 N.E.2d 162, 166 (Ind.Ct.App.1994).

 The Department alleges that there was sufficient evidence to support its determination that Fort was not medically qualified to hold a CDL. At the outset, we note that the only fact of any relevance to this case is that Fort has an unrepaired aneurysm, which is not in dispute. Proper application of the law by the Department is the only question before us requiring extended discussion.

The Department followed IDLAC's recommendation to suspend Fort's CDL.

5. In its order, the trial court issued the following findings of fact:

> 7. The court finds that, based upon the medical records submitted by [Fort's doctors], Fort is medically qualified to operate a commercial vehicle pursuant to 49 C.F.R. [§ ] 391.4–391.49.
>
> 8. The Court also finds the opinion of the IDLAC to be unpersuasive in that IDLAC never conducted an actual physical examination of Fort nor [*sic* ] consulted with [Fort's doctors] to discuss their medical opinions. Moreover, the medical report issued by IDLAC does not specify that Fort is suffering from a medical condition that is likely to inter-

> fere with Fort's ability to safely operate a commercial vehicle as required to medically disqualify an individual pursuant to 49 C.F.R. § 391.41.

These findings are actually conclusions of law, and we review them as such. *See Ashlin Transp. Serv., Inc. v. Indiana Unemployment Ins. Bd.,* 637 N.E.2d 162, 166 (Ind.Ct.App. 1994) (where statute is applied to undisputed facts, review is a question of law). The trial court's other findings consisted of undisputed facts. We also observe that there is no requirement that IDLAC perform its own medical examinations or consult with independent medical examiners concerning individual CDL applications.

Indiana Code Section 9–14–4–4 defines ID-LAC's duties:

> The committee shall provide the commissioner with technical resources to assist in the administration of Indiana driver licensing laws, including providing advice, technical knowledge, and guidance to the commissioner in the area of licensing drivers with health or other problems that may adversely affect a driver's ability to operate a vehicle safely.[6]

In addition, Indiana has adopted federal regulations dealing specifically with the qualifications of commercial drivers. *See* IND.CODE § 8–2.1–24–18 (incorporating federal motor carrier safety regulations). One such regulation provides that a person is physically qualified to drive a commercial vehicle if that person has "no established history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease which interferes with his/her ability to control and operate a commercial motor vehicle safely." 49 C.F.R. § 391.41(b)(7).

To aid interpretation of this provision, the Federal Highway Administration has issued guidelines, including the Conference Report of 1988 ("the Report"). U.S. DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, OFFICE OF MOTOR CARRIERS, CONFERENCE ON NEUROLOGICAL DISORDERS AND COMMERCIAL DRIVERS (1988). The Report provides in part that "[d]rivers with an aneurysm .... that has ruptured and that has not been surgically treated should not be cleared for commercial driving."[7] *Id.* at 23. We conclude that the Department acted within its discretion by following the Report recommendation concerning unrepaired aneurysms. We therefore conclude that the Department's denial of Fort's application for a CDL renewal was supported by substantial evidence and was not contrary to law.

■ As a final consideration, we note that the trial court erred in finding that the Department could not suspend Fort's CDL indefinitely. The Indiana Administrative Code allows for an indefinite suspension of any driver's license until the holder can produce "written medical reports sufficient to assure the bureau of motor vehicles that the respondent is possessed of the requisite physical and/or mental faculties to operate a motor vehicle over the public streets and highways in a safe and sane manner." 140 IND. ADMIN. CODE 1–1–10(a)(4)(C).

Reversed.

BAILEY, J., concurs.

KIRSCH, J., dissents with opinion.

---

6. The trial court concluded that the Department acted contrary to law by "fail[ing] to recognize the medical opinion of [Fort's personal physician] responsible for determining Fort's ability to safely operate a commercial motor vehicle." Although the independent medical examiner is responsible for certifying the applicant, we cannot conclude that the examiner's certification is binding on the Department. Were it so, the Department's statutory and administrative oversight of the issuance and renewal of CDLs would be rendered nugatory.

7. In its Regulatory Guidance of November 17, 1993, 58 Fed.Reg. 60,734, the Federal Highway Administration stated that "[no] prior interpretations and regulatory guidance .... may .... be relied upon as authoritative *insofar as they are inconsistent with the guidance published today*" (emphasis added). A later Regulatory Guidance of April 4, 1997, published at 62 Fed.Reg. 16,370 contains identical language. Neither Regulatory Guidance, however, contradicts the Report's recommendations regarding an unrepaired aneurysm; therefore, contrary to Fort's allegation, the Report's recommendations for such cases were not superseded, and the Department's reliance thereon was proper.

KIRSCH, Judge, dissenting.

I respectfully dissent.

The majority states that "the only fact of any relevance to this case is that Fort has an unrepaired aneurysm, which is not in dispute." *Op.* at 1106. I submit there is another fact which is of paramount relevancy and is most definitely in dispute: namely, the scientific reliability of a thirteen-year-old conference report which, while sponsored by the Federal Highway Administration, Office of Motor Carriers, was never adopted nor promulgated into regulation by the FHWA, and which has been superceded, not once, but twice, by the FHWA in medical advisory guidelines issued in 1993 and 1998. The conference report is the only evidence supporting the Indiana Department of Revenue's decision.

Nothing in the record establishes or even suggests that the 1988 report has any continuing scientific validity. Indeed, the report itself states:

> Given the rapid and accelerating pace of change in the art and science of medicine, it is imperative that the FHWA have a mechanism for timely, even ongoing review and revision of its regulations relating to medical criteria for qualification and disqualification.

Conference Report of 1988, p. 9, *Appellant's Appendix* at 72. Moreover, as noted by the majority, the FHWA specifically stated in promulgating regulatory guidances in November, 1993 and April, 1997 that no "prior interpretation and regulatory guidance may be relied upon as authoritative insofar as they are inconsistent with the guidance published today." 58 Fed. Reg. 60, 734; 62 Fed.Reg. 16,370.[8]

Paul Fort has been examined by qualified medical personnel who have found him medically qualified in accordance with the Federal Motor Carrier Safety Regulations. The only evidence supporting the Department's contrary conclusion is the 1988 Conference Committee Report which is of doubtful continuing probity. I would affirm the trial court's order reversing the Department's denial of licensure in all respects.

## ORDER

This Court having heretofore handed down its opinion in this appeal on December 10, 2001, which opinion was marked Memorandum Decision, Not for Publication;

Comes now the Appellant, by counsel, and files herein Motion to Publish Memorandum Decision, alleging therein, *inter alia,* that said Memorandum Decision involves legal and factual issues of substantial public importance and that a published opinion will clarify those important issues for the Department of Revenue and for the public; that the issues presented in this case are likely to arise in the future and that no decision has previously addressed the issue of the use to the Conference Report of 1988 and therefore prays this Court to publish its decision in this appeal;

The Court having examined said Motion and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED that the Appellant's Motion to Publish memorandum Decision is granted and this Court's opinion heretofore handed down in

---

**8.** The majority states that neither of the later medical guidances contradicts the 1988 report. *Op.* at ——, n. 7. In response, I would note that the FHWA stated in its 1993 regulatory guidance that it was consolidating "previously issued interpretations and regulatory guidance materials...." 58 Fed.Reg. 60734. Moreover, since as previously noted the FHWA never adopted the 1988 report as an interpretation or regulatory guidance, there was no need to expressly contradict the report in the 1993 and 1997 regulatory guidances.

this cause on December 10, 2001, marked Memorandum Decision, Not for Publication, is now ordered published;